J-S65028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PHILIP SCHULTZ | |
| Appellant | No. 455 EDA 2014 |

Appeal from the PCRA Order January 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0301021-2004
CP-51-CR-0901331-2003
CP-51-CR-1015991-2004

BEFORE: PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 18, 2014**

Appellant, Philip Schultz, appeals from the order entered on January 21, 2014 dismissing his second petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. We affirm.

This Court has previously summarized the factual background of this case as follows:

> Appellant was tried for three separate crimes: the July 6, 1999 rape of A.M.; the March 24, 2003 kidnapping of A.Q.; and the May 14, 2003 rape of L.T.
>
> A.M.
>
> On the afternoon of July 6, 1999, Appellant was operating a 1999 GMC Sport Utility Vehicle on Kensington Avenue in an area known for prostitution. The vehicle was registered to Appellant and his mother. Appellant stopped the vehicle in order to engage in conversation with A.M., a 27-year-old white female.

* Retired Senior Judge assigned to the Superior Court.

She agreed to have vaginal sex with Appellant for $50.00. She entered the vehicle, and he drove to a wooded area. Appellant told her that his wife had just had a baby and was not giving him sex. He also told her that his sister was a Philadelphia police officer. A.M. observed a baby seat in the back of the vehicle.

When they exited the vehicle, Appellant offered additional money if A.M. allowed intercourse without a condom; A.M. refused the offer. Appellant then became aggressive and forced his penis into A.M.'s throat, vagina[,] and anus against her will. After Appellant ejaculated, Appellant told A.M. not to report what had happened, because Appellant would learn of the report from his sister and would retaliate.

Appellant left A.M. and drove away. A.M. memorized the license plate. A.M. reported the incident and was taken to Episcopal Hospital where a rape kit was taken for semen samples from her vagina, vulva, cervix[,] and throat. After Appellant's arrest, DNA testing showed that the semen was Appellant's. A.M. refused to discuss the incident with police, and the matter was not pursued until A.M. was interviewed four years later after Appellant had become the suspect in other sexual offenses. By that time, A.M. had difficulty remembering some details of the assault.

M.L.[1]

[At trial, M.L. testified as follows.[2]] On the evening of May 20, 2001, Appellant was operating a dark SUV on Kensington Avenue. He pulled up to M.L., a 29-year-old white female, who was standing on the highway. M.L. willingly entered Appellant's vehicle and observed two baby seats.

Appellant drove to a wooded area. After exiting the vehicle, Appellant forced M.L. onto her hands and knees, pulled her pants down[,] and forced his penis into her vagina against her will.

---

[1] The most recent evidence of record indicates that M.L. is currently married and no longer uses her maiden name. For clarity, we refer to her as M.L. throughout this memorandum.

[2] As discussed in great depth *infra*, M.L. has since recanted portions of her trial testimony as evidenced in a hand written statement dated December 27, 2012.

Appellant did not use a condom. He then drove away and left M.L. alone in the woods; she did not observe the license plate number.

M.L. called the police, who took her to Episcopal Hospital where she was treated for scratches and bruises. A rape kit was taken and semen was recovered from her panties and vagina. DNA testing showed that the semen was Appellant's.

After Appellant was arrested, his attorney provided the Commonwealth with evidence that tended to show that M.L. was engaged in prostitution. After M.L. was confronted with the evidence, she failed to appear for trial. At that point, the trial court granted the Commonwealth's motion to *nolle pros* the case without prejudice.

A.Q.

On the evening of March 24, 2003, Appellant was operating the same 1999 GMC SUV which was registered to Appellant and his mother. Appellant spoke to A.Q., a 16-year-old white female who was walking on Jasper Street near Tioga Street (approximately one block from Kensington Avenue). Appellant convinced [A.Q.] to enter the vehicle. Appellant spoke with her for about ten minutes, during which time he told her that his wife had just had a baby and had moved out. He also told A.Q. that he was a Philadelphia police officer. Then, suddenly, he drove off. A.Q. tried to open the door, but found that it was locked. After crossing the Tacony Palmyra Bridge and crossing into New Jersey, Appellant stopped the vehicle in a New Jersey field or parking lot and told A.Q. to give him oral sex. When she refused, Appellant forced her head into his lap and ignored her cries until he ejaculated. Appellant did not use a condom.

After he had ejaculated, Appellant told A.Q. to spit out the semen; she did. Appellant then drove back to the middle of the Tacony Palmyra Bridge, where he ordered A.Q. out of the vehicle. As he drove away, A.Q. memorized the license plate number.

L.T.

On the evening of May 14, 2003, Appellant was operating an SUV in the area of Kensington Avenue and Hilton Street. He

pulled the vehicle up to L.T., a 23-year-old white female who was standing on the sidewalk with two other women. L.T. willingly entered the vehicle. Appellant told her that his wife had just had a baby. He also told her that he was a Philadelphia police officer assigned to the 9th police district. Appellant drove to a ditch near a parking lot on Erie Avenue, climbed on top of [L.T.], pulled his pants down and forced his penis into her vagina even though she told him to stop. Appellant did not use a condom. After ejaculating, he drove to Kensington Avenue and Ontario Street and left her there. Police took L.T. to Episcopal Hospital. DNA testing of the sperm recovered with a rape kit showed that it was Appellant's sperm.

*Commonwealth v. Schultz*, 46 A.3d 818 (Pa. Super. 2012) (unpublished memorandum), at 1-4, *appeal denied*, 50 A.3d 126 (Pa. 2012) (internal alterations, ellipses, and citation omitted).

We have previously summarized the procedural history of this case as follows.

Appellant was first arrested on July 31, 2001 for the assault on M.L.. The *nolle pros* was granted on May 29, 2002. On June 30, 2003, Appellant was arrested for the assault on L.T. . . . On January 9, 2004, he was held for court for the assault on A.Q. On February 19, 2004, Appellant was held for court for the assault on A.M. The Commonwealth moved to consolidate the trials for the assaults on A.M., A.Q.[,] and L.T. It also filed a motion *in limine* to introduce evidence of Appellant's assault on M.L. The trial court granted both of the Commonwealth's motions.

On May 18, 2005, the jury found Appellant guilty of two counts of rape,[3] two counts of impersonating a public servant,[4] and one count each of kidnapping,[5] unlawful contact with a minor,[6]

---

[3] 18 Pa.C.S.A. § 3121.

[4] 18 Pa.C.S.A. § 4912.

[5] 18 Pa.C.S.A. § 2901.
*(Footnote Continued Next Page)*

- 4 -

and intimidating a witness.[7]   On September 16, 2005, a Megan's Law II hearing was held pursuant to 42 Pa.C.S.A. § 9754.4 [(repealed)], and Appellant was determined to be a sexually violent predator within the meaning of the Act.   On January 13, 2006, Appellant was sentenced to serve an aggregate term of 20½ to 51 years[' imprisonment].

On November 30, 2007, this Court affirmed Appellant's judgment of sentence and, on July 1, 2008, [our] Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Schultz*, 944 A.2d 804 (Pa. Super. 2007) (unpublished memorandum), *appeal denied*, 951 A.2d 1163 (Pa. 2008).

On April 29, 2009, Appellant filed a timely, *pro se* PCRA petition.   The PCRA court appointed counsel to represent Appellant.   After independently reviewing the record, however, appointed counsel found Appellant's petition to be meritless.   Therefore, counsel filed a no-merit letter and petitioned the court for leave to withdraw representation.  *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). . . . [O]n August 10, 2010, the PCRA court finally dismissed Appellant's [first] PCRA petition. Appellant then filed a timely, *pro se* notice of appeal.

*Commonwealth v. Schultz*, 46 A.3d 818 (Pa. Super. 2012) (unpublished memorandum), at 4-5 (certain internal citations omitted).  We affirmed, *id.* at 13, and our Supreme Court denied Appellant's petition for allowance of appeal.  *Commonwealth v. Schultz*, 50 A.3d 126 (Pa. 2012).

Thereafter, on February 22, 2013, Appellant filed a counseled second PCRA petition.  Appellant averred that the PCRA court possessed jurisdiction over his patently untimely second PCRA petition because he had satisfied the

*(Footnote Continued)* ───────────────

[6] 18 Pa.C.S.A. § 6318.

[7] 18 Pa.C.S.A. [§ 4952].

- 5 -

after-discovered evidence and government interference exceptions. To establish his right to substantive relief, Appellant alleged that the Commonwealth violated his right to due process of law by failing to disclose materials pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963). Specifically, he alleged that the Commonwealth failed to inform him that M.L. was reluctant to testify at trial and that law enforcement responded by threatening her with legal consequences. In support of this argument, Appellant relied upon a handwritten statement allegedly prepared by M.L. and dated December 27, 2012. Appellant also alleged that the Commonwealth violated his right to due process by entering into evidence M.L.'s testimony pursuant to Pennsylvania Rule of Evidence 404(b). Finally, he alleged that all of his prior counsel rendered ineffective assistance by failing to raise and pursue these claims. After giving notice pursuant to Pennsylvania Rule of Criminal Procedure 907(1), the PCRA court dismissed Appellant's petition on January 21, 2014, finding that Appellant's petition was untimely and that he had failed to satisfy any of the PCRA's timeliness exceptions. This timely appeal followed.[8]

Appellant presents four issues for our review:

1. Did the [PCRA] court have jurisdiction over Appellant's PCRA [petition] under the after-discovered evidence and/or

---

[8] The PCRA court did not order a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. On April 10, 2014, however, the PCRA court issued an opinion setting forth its rationale for dismissing Appellant's second PCRA petition.

government interference exceptions to the requirement that the petition be filed within one year of final judgment?

2. Did the Commonwealth violate Appellant's due process rights by suppressing exculpatory evidence when [M.L.] told law enforcement before trial that she did not want to testify and law enforcement then told her she would have problems with her probation if she did not testify, resulting in her only years later disclosing that she invented the forcible rape aspects of her testimony?

3. Did the Commonwealth violate due process of law when it introduced evidence of uncharged offenses, which had earlier been dismissed because the complainant was determined to have lied, thus denying Appellant his opportunity to test the uncharged allegations[, and w]ere trial, direct appeal, and initial [PCRA] counsel ineffective for failing to litigate this claim?

4. Did the [PCRA] court err when it refused to consider that the above three claims were not reviewable because of the ineffective assistance of initial [PCRA] counsel?

Appellant's Brief at 1-2.

"Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's findings of fact, and whether the PCRA court's determination is free of legal error." ***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted).

Furthermore, as this Court has explained:

[C]ourts will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong *prima facie* showing that a miscarriage of justice may have occurred.

Appellant makes a *prima facie* showing of entitlement to relief only if he demonstrates either that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged.

*Commonwealth v. Medina*, 92 A.3d 1210, 1215 (Pa. Super. 2014) (*en banc*) (internal quotation marks and citations omitted).

In his first issue on appeal, Appellant argues that the PCRA court possessed jurisdiction to consider the merits of his second PCRA petition. The PCRA court determined that it lacked jurisdiction to consider the merits of Appellant's second PCRA petition as it was untimely and Appellant had failed to prove the applicability of an exception to the PCRA's timeliness requirement. A court lacks jurisdiction over the merits an untimely PCRA petition when the Appellant has failed to plead and prove the applicability of an exception to the timeliness requirement. *Commonwealth v. Callahan*, 2014 WL 4696253, *2 (Pa. Super. Sept. 23, 2014).

A PCRA petition is timely if it is "filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). In this case, there is no dispute that Appellant's second PCRA petition was untimely. *See* Second PCRA Petition, 2/22/13, at 6. Appellant's judgment of sentence became final on September

29, 2008. Therefore, in order for a PCRA petition to be considered timely, it should have been filed on or before September 29, 2009. Appellant's second petition was filed in February 2013, and, hence, was patently untimely.

An untimely PCRA petition may be considered if one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i-iii). If an exception applies, a PCRA petition may be considered if it is filed "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Appellant contends that he has satisfied the government interference and after-discovered evidence exceptions to the PCRA's one-year timeliness requirement. We first consider Appellant's contention that he has satisfied the after-discovered evidence exception. In order to satisfy the after-discovered evidence exception, Appellant must plead and prove "that the facts upon which the *Brady* claim is predicated were not previously known

to the petitioner and could not have been ascertained through due diligence." **Commonwealth v. Hawkins**, 953 A.2d 1248, 1253 (Pa. 2006) (citation omitted).[9]

Appellant has failed to satisfy his burden of pleading and proving the applicability of the after-discovered evidence exception. Appellant relies upon this court's *en banc* decision in **Medina** and a three-judge panel of this Court's decision in **Commonwealth v. Davis**, 86 A.3d 883 (Pa. Super. 2014). We conclude however, that **Medina** and **Davis** are distinguishable. In **Medina**, the defendant was convicted of murder based in part on the testimony of two witnesses, the Toro brothers. **Medina**, 92 A.3d at 1213 (citation omitted). Fourteen years after Medina was convicted, and five years after his judgment of sentence became final, the Toro brothers recanted their trial testimony. **Id.** at 1213-1214. Within 60 days of the recantations, Medina filed a PCRA petition and alleged that the Toro brothers' recantations satisfied the after-discovered evidence exception to

---

[9] The PCRA court cited to **Commonwealth v. D'Amato**, 856 A.2d 806, 823 (Pa. 2004), in support of its application of a four-part analysis of whether Appellant satisfied the after-discovered evidence exception to the PCRA's timeliness requirement. **See** PCRA Court Opinion, 4/10/14, at 6-7. **D'Amato**, however, addressed a substantive after-discovered evidence claim. **Id.** "[A]n after-discovered evidence claim and the timeliness exception based on previously unknown facts are distinct, and the issues are analyzed differently." **Commonwealth v. Davis**, 86 A.3d 883, 891 n.7 (Pa. Super. 2014) (citation omitted). Specifically, a petitioner is not required to satisfy the second, third, and fourth elements of the test set forth in **D'Amato** in order to satisfy the after-discovered evidence exception and have his petition considered on the merits.

the PCRA's timeliness requirement. *See Medina*, 92 A.3d at 1217 (citation omitted). This Court held that that the PCRA court's conclusion that Medina had satisfied the after-discovered evidence exception was supported by the record. *Id.* at 1218.

In *Davis*, the defendant was convicted of first-degree murder based, in part, on the testimony of Jerome Watson ("Watson"). *Davis*, 86 A.3d at 885-886. Approximately 34 years after Davis' judgment of sentence became final, Watson recanted his trial testimony and stated that he had made a deal with the prosecution that was not disclosed to Appellant. *Id.* at 888. We held that since there was no indication at trial that such a deal had been made, or that Watson was otherwise lying, it would have been unreasonable to require that Davis seek out information in publicly available documents. *Id.* at 890-891.

In both *Medina* and *Davis* this Court's focus was on the fact that neither Medina nor Davis had reason to look further into the testimony of the Toro brothers or Watson. In *Medina*, this Court concluded that Hector Toro's testimony was unequivocal and that there was no reason for Medina to believe that he could elicit exculpatory testimony through a fishing expedition. *Medina*, 92 A.3d at 1218-1219. Similarly, in *Davis* this Court noted that there was no reason for Davis to look into the public records for details of a deal between Watson and the Commonwealth. *Davis*, 86 A.3d at 890.

- 11 -

In this case, there were numerous reasons why Appellant should have sought out information to show M.L.'s testimony was untruthful. First, Appellant would have been aware that he had not raped M.L. if, in fact, he had not.[10] More importantly, Appellant knew that M.L. failed to show at trial in the case relating to Appellant's alleged assault upon M.L. Appellant also knew that M.L. had previously lied to police regarding her work as a prostitute. Appellant knew that M.L. was a probationer. Appellant also knew of the conversation he had with M.L. in the stairwell of the courthouse.[11] When these facts are considered together, a reasonable person would have searched for evidence that M.L. had lied at trial.

Instead, there is nothing in Appellant's petition that shows Appellant searched for such evidence prior to the pendency of the appeal regarding Appellant's first PCRA petition. Appellant concedes in his brief that no

---

[10] As noted in **Medina** and **Davis**, this alone is not sufficient to prove that Appellant failed to act with due diligence. That, however, does not mean that it is an irrelevant fact.

[11] M.L.'s December 27, 2012 statement provides in relevant part:

> I believe it was before I testified [at Appellant's trial] I was smoking in the courthouse stairwell when [Appellant] approached me. [Appellant] wasn't threatening but I was uncomfortable. I was a bit intimidated because we both knew I was lying. I didn't know him, other than the one encounter and didn't know what he was capable of. He said he would pay me to tell the truth. I said no and ran back to the floor.

M.L. Statement, 12/27/12, at 2.

investigator was hired to look for such information until Appellant hired his current counsel for the filing of a federal *habeas corpus* petition. Upon the hiring of an investigator, Appellant was able to quickly locate M.L. and she recanted her trial testimony and gave the statement relied upon by Appellant. This is markedly different than **Davis**, in which there was evidence that Davis had hired an individual to search for Watson but was unable to locate him. **Davis**, 86 A.3d at 891. [12]

Appellant waited over eight years after the trial in this matter to locate M.L. and convince her to recant her testimony. The fact that Appellant had court-appointed counsel during much of this period is irrelevant. The burden ultimately falls upon the petitioner to exercise due diligence. In this case, there is simply no evidence that Appellant acted with due diligence until he hired his current counsel during the pendency of the appeal of his first PCRA petition. We therefore conclude that Appellant failed to plead and prove that he filed his second PCRA petition within 60 days of when he could have received this after-discovered evidence with the exercise of due diligence.

---

[12] Appellant cites to **Commonwealth v. Bennett**, 930 A.2d 1264, 1274 (Pa. 2007) in support of his argument that we should remand for an evidentiary hearing on due diligence. **Bennett**, however, is distinguishable from the case at bar. In Bennett, the petitioner alleged that his prior counsel had abandoned him. **Id.** He had taken several steps on his own which constituted due diligence to ascertain whether counsel had abandoned him, *i.e.*, writing to this Court and the PCRA court. **Id.** at 1272. Thus, our Supreme Court determined that he was entitled to an evidentiary hearing on whether he acted with due diligence. In this case, Appellant did not plead that he took such actions.

- 13 -

Having determined that Appellant has failed to satisfy his burden of proving the applicability of the after-discovered evidence exception, we next turn to whether Appellant has satisfied his burden of proving the applicability of the government interference exception to the PCRA's timeliness requirement. "Although a *Brady* violation may fall within the government[] interference exception, [Appellant] must plead and prove the failure to previously raise the claim was the result of interference by government officials[.]" *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008) (citation omitted).[13] In this case, Appellant has failed to plead and prove that the government interfered with his ability to previously raise his claims. To the contrary, Appellant has had full access to the courts throughout his confinement. He was able to raise and litigate issues during his first PCRA petition and began his strategy to litigate this second PCRA petition while his first PCRA petition was still pending. As such, the government did not interfere with Appellant's ability to raise the claims set forth in his second PCRA petition. Thus, Appellant has failed to plead and prove that the government interference exception to the PCRA's timeliness requirement applies in this case.

---

[13] Appellant argues that *Abu-Jamal* makes clear that there is no due diligence requirement with respect to the government interference exception. The PCRA and *Abu-Jamal*, however, make clear that, in order for the government interference exception to apply, the government must have prevented Appellant from presenting his claim.

Appellant also contends that the PCRA court possessed jurisdiction to consider the merits of his claims because of his prior counsels' ineffectiveness in failing to raise those claims at trial, on direct appeal, and/or in his first PCRA petition. However, "a petitioner's belief that he has uncovered a colorable claim of ineffectiveness by prior counsel does not entitle the petitioner to an exception to the [PCRA's] timeliness requirements." *Commonwealth v. Crews*, 863 A.2d 498, 503 (Pa. 2004) (citations omitted); *see Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007) (citations omitted). Accordingly, his prior counsels' alleged ineffectiveness does not provide an exception to the PCRA's one-year time-bar. Therefore, Appellant has failed to plead and prove the applicability of any of the PCRA's timeliness exceptions. As such, the PCRA court correctly held that it lacked jurisdiction to consider the merits of Appellant's second PCRA petition.

Even if the PCRA court had possessed jurisdiction to consider the merits of Appellant's second PCRA petition, we conclude that Appellant failed to plead and prove that his conviction was a miscarriage of justice and/or that he was actually innocent.[14] *See Medina*, 92 A.3d at 1215 (citations omitted).[15]

---

[14] Appellant's very able counsel avers that he was originally retained to file a federal *habeas corpus* petition. Appellant, through counsel, filed a federal *habeas corpus* petition on January 11, 2013. *Schultz v. Wenerowicz*, 13cv177 (E.D. Pa.). In order to prevail in his federal *habeas corpus*
*(Footnote Continued Next Page)*

"A **Brady** violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant." **Commonwealth v. Tedford**, 960 A.2d 1, 30 (Pa. 2008).[16]  Appellant fails to satisfy both the first and third elements of a **Brady** claim.

As to the first element, M.L. does not aver in her statement that she told the Commonwealth that her story was false.  M.L. likewise does not aver in her statement that she told the Commonwealth that she was reluctant to testify.  Instead, M.L. stated that:

> [Appellant saw me in the stairwell and] said he would pay me to tell the truth.  I said no and ran back to the [courtroom].  The lady detective caught me and asked what happened.  I told her but **I didn't tell her I lied.**  I knew I could tell the truth but was afraid.  I didn't want to testify.  The detectives dropped

---

*(Footnote Continued)*

litigation, however, Appellant is required to exhaust his remedies in state court.  **See** 28 U.S.C. § 2254(b)(1)(A).  Thus, Appellant's counsel filed the instant PCRA petition in February, 2013.  After Appellant's second PCRA petition was filed, the United States District Court for the Eastern District of Pennsylvania stayed and administratively closed Appellant's federal *habeas corpus* case pending the outcome of these proceedings.  **Schultz v. Wenerowicz**, 13cv177 (E.D. Pa. Mar. 26, 2013).  Out of an abundance of caution, we proceed to an alternative merits analysis.  **See Rolan v. Coleman**, 680 F.3d 311, 319–321 (3d Cir. 2012) (deference is owed to state court's alternative merits analysis under the Antiterrorism and Effective Death Penalty Act).

[15] We note that even if this were Appellant's first PCRA petition, we would come to the same conclusions regarding the merits of his **Brady**, Rule 404(b), and ineffectiveness claims.

[16] Courts use the term "prejudice" interchangeably with the term "materiality."  **See Banks v. Dretke**, 540 U.S. 668, 698 (2004).

hints they knew I was a probationer. It was enough to frighten me[.]

M.L.'s Statement, 12/27/12, at 2 (emphasis added).

Thus, Appellant has failed to plead and prove that the Commonwealth suppressed evidence that M.L. was lying. It is axiomatic that in order to suppress evidence the Commonwealth must possess such evidence (or should possess such evidence). In this case the Commonwealth took reasonable steps to ascertain if M.L. were telling the truth, *i.e.*, the female detective asked M.L. what had occurred. Yet, M.L. failed to tell the detective, or any other officer of the Commonwealth, that she was reluctant to testify.

M.L.'s allegation that the detectives dropped hints that they knew she was on probation does not rise to the level of intimidation or a ***Brady*** violation as is argued by Appellant. M.L. does not allege that the detectives inferred that if she testified truthfully that her probationary sentence would be jeopardized. Instead, she states only that they inferred they knew she was a probationer. Any fear that M.L. may have had based upon these hints was suspect. Accordingly, Appellant has failed to satisfy the first prong of a ***Brady*** claim.

Furthermore, Appellant has failed to prove the necessary prejudice under ***Brady***. In order to prove prejudice under ***Brady***, Appellant is required to show that if the evidence had been disclosed prior to trial, there is a "reasonable probability of a different result." ***Banks v. Dretke***, 540

U.S. 668, 699 (2004) (citation omitted). "A reasonable probability for these purposes is one which undermines confidence in the outcome of the trial." **Commonwealth v. Simpson**, 66 A.3d 253, 264 (Pa. 2013) (internal quotation marks and citation omitted).[17]

M.L.'s testimony was admitted under Pennsylvania Rule of Evidence 404(b) as a prior bad act. Appellant was not charged with the rape of M.L. The crimes Appellant was charged with related to his assaults of A.M., A.Q., and L.T.[18] All three of those victims testified convincingly at trial as outlined above. In contrast, as M.L. notes in her statement, and as Appellant admits in his brief, defense counsel was able to impeach M.L. at trial. Specifically, it was noted that M.L. had previously lied to police, that the charges against Appellant for the rape of M.L. had been dropped after M.L. did not report for trial, and that M.L. was a probationer. Thus, when considered in context, M.L.'s testimony was a very minor portion of the Commonwealth's case. The main witnesses against Appellant were A.M., A.Q., and L.T. who have not recanted their testimony. As such, there is not a reasonable probability that

---

[17] Appellant focuses on the PCRA court's use of the term "**would not** have been different." Appellant's Brief at 17 (emphasis in original), *quoting* PCRA Court Opinion, 4/10/14, at 12. It is obvious, however, that if the outcome of Appellant's trial would have been the same then there is no reasonable probability that the outcome would have been different. Thus, we interpret the PCRA court's statement as evidencing its belief that Appellant fell short of proving prejudice under **Brady**.

[18] Although Appellant was not expressly charged with the sexual assault of A.Q., the charges involving A.Q. were related to the sexual assault.

the outcome of the trial would have been different if the Commonwealth would have informed Appellant prior to trial that M.L. was reluctant to testify.[19]

Appellant argues that statements made by the prosecution during its closing arguments are evidence that M.L.'s testimony was critical to the Commonwealth's case. The test for prejudice under **Brady**, however, is an objective one. **See In re Sassounian**, 887 P.2d 527, 532–533 (Cal. 1995), *citing* **Strickland v. Washington**, 466 U.S. 668, 695 (1984). Prior to a conviction, prosecutors believe that every piece of incriminating evidence against a defendant is critical to their case and argue as such to courts (in the suppression context) and juries (in the trial context). After a conviction, prosecutors believe that no piece of incriminating evidence is critical to their case and argue as such to this Court. It is our duty, however, to determine, based on objective criteria, if there is a reasonable probability that the outcome of the proceedings would have been different if the evidence had been disclosed prior to trial. We conclude that there is not such a reasonable probability in this case. Therefore, Appellant has failed to prove the requisite prejudice for a successful **Brady** claim. Accordingly, as Appellant has failed to plead and prove that his underlying **Brady** claim has

_____

[19] To be clear, "The test for materiality 'is not a sufficiency of [the] evidence test.'" **Amado v. Gonzalez**, 758 F.3d 1119, 1139 (9th Cir. 2014), *quoting* **Kyles v. Whitley**, 514 U.S. 419, 434 (1995). Nonetheless, the evidence of Appellant's guilt was so overwhelming that we conclude that evidence of M.L.'s reluctance to testify was not material under **Brady**.

merit, he would not have been entitled to relief if the PCRA court had possessed jurisdiction over the claim.

If the PCRA court had jurisdiction to consider the merits of Appellant's Rule 404(b) claim, we would likewise conclude that the PCRA court correctly dismissed the petition. Appellant contends that the Commonwealth violated his due process rights by introducing M.L.'s testimony. Appellant argues that the Commonwealth's *nolle pros* of the charges relating to Appellant's alleged sexual assault of M.L., due to M.L.'s originally telling police that she was not working as a prostitute, precluded introduction of M.L.'s testimony. He claims that such admission violated his due process rights under the Fourteenth Amendment.

As this Court has explained, Pennsylvania Rule of Evidence 404(b) "is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior crimes and prior wrongs and acts, the latter of which, by their nature, often lack definitive proof." **Commonwealth v. Lockcuff**, 813 A.2d 857, 861 (Pa. Super. 2002), *appeal denied*, 825 A.2d 638 (Pa. 2003).

We first note that Appellant's argument that the admission of M.L.'s testimony under Rule 404(b) violated his due process rights is waived for the purposes of PCRA review. Appellant could have raised such a claim on direct appeal since all of the facts upon which this argument are predicated were known at the time of trial. **See Commonwealth v. Michaud**, 70 A.3d 862,

869 n.7 (Pa. Super. 2013) (citation omitted). As such, he may not raise allegation of error in his second PCRA petition.

Even if this argument were not waived for PCRA purposes, it is without merit. Appellant implies that the prosecution knew that M.L. lied about the alleged rape. However, as discussed above, the prosecution had no indication that M.L. was reluctant to testify against Appellant in this trial because her allegations of rape were untrue. Instead, what the Commonwealth was aware of was the fact that M.L. initially lied to police regarding whether she was working as a prostitute on the night she was allegedly raped by Appellant.[20] During the trial in this case, the prosecution did not misrepresent whether M.L. was working as a prostitute. In fact, it eventually surfaced during trial that M.L. was indeed working as a prostitute on the night that she was allegedly raped by Appellant. Thus, the prosecution did not intentionally permit M.L. to testify untruthfully in this matter.

In the case *sub judice*, M.L. lied to police during the investigation of her alleged rape and the charges were dismissed. The Commonwealth still produced evidence of M.L.'s alleged rape under Pennsylvania Rule of Evidence 404(b). Defense counsel was then able to impeach M.L. with this

---

[20] Even if the Commonwealth were aware of M.L.'s status as a working prostitute, this fact would not, by itself, defeat any contention that she had been raped by Appellant. Such facts are only relevant to whether any sexual activity between Appellant and M.L. was consensual.

prior false statement.  We see no reason that the fact-finder should not have been able to determine whether to believe M.L.'s testimony.  The jury was presented with all relevant information that was available at the time and it could have chosen to disregard M.L.'s testimony because of her prior false statements to police.

Finally, we note that "violations of state rules of procedure do not automatically constitute violations of due process."  ***Robinson v. Smyth***, 258 F. App'x 469, 471 n.1 (3d Cir. 2007) (citation omitted); ***see Riccio v. Cnty. of Fairfax***, 907 F.2d 1459, 1469 (4th Cir. 1990); ***see also Cleveland Bd. of Educ. v. Loudermill***, 470 U.S. 532, 541 (1985). Appellant makes almost no attempt to explain how the alleged violation of Pennsylvania Rule of Evidence 404(b) constituted a violation of his due process rights.  Instead, he states in a conclusory fashion that it was fundamentally unfair to admit prior bad acts evidence for which charges had previously been dismissed.  Appellant's argument, however, would render any admission of Rule 404(b) evidence for uncharged crimes a violation of the Due Process Clause of the Fourteenth Amendment.  It is well-settled that Rule 404(b) fully comports with due process requirements.  ***See Richardson v. Lemke***, 745 F.3d 258, 266 (7th Cir. 2014) ("Although the Federal Rules of Evidence do limit the introduction of evidence of uncharged criminal behavior, **see** Fed.R.Evid. 404(b), there is no federal constitutional [] right to a state-court trial free of such evidence, even where that evidence

is used to show propensity."). Thus, even if the trial court had erred by admitting M.L.'s testimony under Rule 404(b), Appellant has failed to plead and prove that such violation constituted a violation of his right to due process of law.

For all of these reasons, we conclude that even if Appellant's second PCRA petition were timely he would not be eligible for relief with respect to his Rule 404(b) claim. The Rule 404(b) claim is waived for failure to raise the issue on direct appeal. Furthermore, even if the argument were not waived, the trial court did not err by admitting M.L.'s testimony under Pennsylvania Rule of Evidence 404(b). Finally, even if the trial court erred by admitting M.L.'s testimony under Rule 404(b), such error did not rise to the level of a violation of Appellant's right to due process of law.

In his final substantive claim, Appellant alleges that his prior counsel were ineffective for failing to raise or pursue his other two substantive arguments.[21] As Appellant failed to plead and prove an exception to the timeliness requirement, the PCRA court lacked jurisdiction over his ineffectiveness claims. We, however, address the merits of all Appellant's ineffectiveness claims.

A "defendant's right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, [Section] 9 of the Pennsylvania

---

[21] Appellant raises ineffectiveness claims in all three of his substantive issues. All of Appellant's ineffectiveness claims are encompassed in his third substantive issue, thus, we only address the ineffectiveness claims once.

Constitution is violated where counsel's performance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013) (internal quotation marks and citation omitted). "[C]ounsel is presumed to be effective." *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014) (citation omitted).

In order to overcome the presumption that counsel was effective, Appellant must establish that "(1) the underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his client's interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Luster*, 71 A.3d 1029, 1039 (Pa. Super. 2013) (*en banc*), *appeal denied*, 83 A.3d 414 (Pa. 2013) (internal alterations, quotation marks, and citation omitted). The petitioner bears the burden of proving his counsel was ineffective. *See Commonwealth v. Williams*, 980 A.2d 510, 520 n.12 (2009). "A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim." *Commonwealth v. Ly*, 980 A.2d 61, 73 (Pa. 2009).

In this case, Appellant has failed to prove the first and third prongs of ineffectiveness. "It is axiomatic that counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Charleston*, 94 A.3d 1012, 1024 (Pa. Super. 2014) (internal alteration and

citation omitted). As noted above, we conclude that both Appellant's first and second substantive issues lack arguable merit. As such, his trial, direct appeal, and PCRA counsel could not be deemed ineffective for failing to raise or pursue these claims.

Appellant has also failed to establish the requisite prejudice to prove ineffective assistance of counsel. As to ineffectiveness for failing to previously raise a Rule 404(b) claim, as we described in our analysis of the prejudice prong of Appellant's *Brady* claim, M.L.'s testimony was a minor part of the Commonwealth's case against Appellant. The Commonwealth offered much more compelling testimony from each of the three victims with whose assaults Appellant was charged in this case. In addition to the testimony of the three victims, DNA testing tied Appellant to the assaults. Furthermore, all three victims testified to essentially the same course of conduct by Appellant during their assaults. M.L.'s testimony was, at best, cumulative of this evidence. Accordingly, Appellant has failed to show that he was prejudiced by the admission of M.L.'s Rule 404(b) testimony.

As to ineffectiveness with respect to counsels' failure to previously raise a *Brady* claim, the test for prejudice under *Brady* is the same as the third prong of the test for ineffectiveness. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). As we have determined that Appellant has failed to prove prejudice under *Brady*, we likewise conclude that he has failed to prove prejudice with respect to his prior counsels' failure to raise a *Brady* claim at

trial, on direct appeal, and/or in his first PCRA petition. Accordingly, Appellant has failed to plead and prove his ineffective assistance of counsel claims.

In sum, there is no dispute that Appellant filed his second PCRA petition more than one year after his judgment of sentence became final. We conclude that Appellant failed to satisfy his burden of pleading and proving the applicability of the after-discovered evidence and/or government interference exceptions to the PCRA's timeliness requirement. Furthermore, even if the PCRA court possessed jurisdiction over Appellant's substantive claims, those claims are without merit. Therefore, we affirm the PCRA court's order dismissing Appellant's second PCRA petition.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *11/18/2014*